THE PEOPLE OF THE STATE OF NEW YORK ex rel. DELBERT H. DECKER, Appellant, *v.* EDWARD McCUE et al., Composing the Board of Assessors of the City of New York et al., Respondents.

NEW YORK (CITY OF) — WHEN ASSESSMENTS OBJECTED TO MUST BE REVIEWED BY BOARD OF REVISION OF ASSESSMENTS. Under section 950 of the charter of the city of New York (L. 1897, ch. 378) where an assessment is made by the board of assessors and objections thereto are interposed in writing, and the assessment is not altered so as to satisfy the objectors, the board has no power to declare the assessment confirmed, but under section 944 it is its duty to present such objections with the proposed assessment to the board of revision of assessments for its review.

*People ex rel. Decker* v. *McCue,* 74 App. Div. 40, reversed.

(Argued January 6, 1903; decided January 27, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 2, 1902, which dismissed a writ of certiorari to review the action of the board of assessors of the city of New York in imposing a local assessment for the expense incurred in the. improvement of Flatbush avenue in the borough of Brooklyn.

The facts, so far as material, are stated in the opinion.

*Edward M. Bassett* and *W. W. Thompson* for appellant. The board of assessors of the city of New York had no power to confirm this assessment. (L. 1889, ch. 161; L. 1894, ch. 356; L. 1896, ch. 641; L. 1897, ch. 378, §§ 5, 943, 944,

945, 950; L. 1882, ch. 410, § 871; *Matter of Munn*, 165 N. Y. 153.) The board of assessors had no jurisdiction to confirm the assessment in question unless it was specifically and clearly granted by statute. (*Æ. Ins. Co.* v. *Mayor, etc.*, 153 N. Y. 331, 339; *Miller* v. *City of Amsterdam*, 149 N. Y. 288; *Beardslee* v. *Dolge*, 143 N. Y. 160; *McLean* v. *Jephson*, 123 N. Y. 142; *Hilton* v. *Fonda*, 86 N. Y. 339; *Matter of N. Y. C. Protectory*, 77 N. Y. 342; *Nat. Bank of Chemung* v. *City of Elmira*, 53 N. Y. 49; Cooley on Taxn. [2d ed.] 418, 609; Cooley on Const. Lim. [3d ed.] 74, 78, 517, 522; 25 Am. &. Eng. Ency. of Law [1st ed.], 246; *Matter of Embury*, 19 App. Div. 214; 154 N. Y. 746; *People* v. *Featherstonhaugh*, 172 N. Y. 112.)

*George L. Rives, Corporation Counsel* (*James McKeen* of counsel), for respondents. The board of assessors had the power to complete this assessment and dispose of the objections without reference thereof to the board of revision of assessments. (L. 1889, ch. 161; L. 1894, ch. 356; L. 1897, ch. 378, §§ 5, 942, 943, 1609, 1614.)

MARTIN, J. The improvement under consideration was commenced in 1889 and completed about 1901. In the meantime bonds had been properly issued for the cost thereof, the town of Flatbush had been annexed to the city of Brooklyn, and the latter city had become a part of the greater city of New York. Until the town of Flatbush became a part of the city of New York no assessment district had been fixed. In 1901 the board of assessors of that city fixed such district and established the amount to be paid by the property owners. Objections in writing were interposed by the relator to the assessments thus made, and the board of assessors refused to change them, but they were confirmed. It is now contended that where objections in writing are presented the power to confirm assessments made by the board of assessors is vested in the board of revision of assessments. (N. Y. Charter, §§ 943–950.) If the relator's claim that, under the circumstances, the board of assessors had no jurisdiction to

1903.]        People ex rel. Decker *v.* McCue.        349

N. Y. Rep.]        Opinion of the Court, per Martin, J.

confirm their own assessments and that that power was vested in the board of revision be correct, it follows that his contention must be sustained and the assessments must be transmitted to that board for revision. This involves a brief review of the various statutes relating to this subject.

In 1889 a statute was enacted which provided for the appointment of five persons as street and sewer commissioners of the town of Flatbush. Among other things they were empowered to improve Flatbush avenue and to issue bonds for the expense of such improvement. (L. 1889, ch. 161, §§ 8, 9.) All the expenses of such improvement were to be finally charged to a district of assessment, to be fixed by such commissioners, and levied and collected from the property in such district in the annual tax levies next after the completion of such improvement in ten annual installments, equal or nearly equal, to be fixed by such commissioners in such manner that the aggregate amount of such installments should pay the entire amount charged on such assessed district with interest until the time of the payment of the bonds to be issued therefor. (§§ 1, 2.) The commissioners were required to make a map showing the assessment district, to give ten days' notice of where the map was filed, of the amount to be charged and when persons could be heard in opposition to the district or amount. After hearing such objections, they could change or confirm the assessment, and their decisions were final.

Before the commissioners had completed the work and fixed the assessment district, the town of Flatbush was annexed to the city of Brooklyn, and a board consisting of the mayor, commissioner of city works of that city and the supervisor of Flatbush succeeded to the powers and duties of the five commissioners appointed under the act of 1889. (L. 1894, ch. 356.) Again, before this last board had fixed the assessment district, its powers were vested in the commissioner of city works of the city of Brooklyn, and the other provisions of the two previous acts in regard to this improvement were continued in force. (L. 1896, ch. 641.) This situation continued until January 1, 1898, when the charter of Greater

New York went into effect, which abolished the office of commissioner of city works of the city of Brooklyn. (Charter, § 1615.) That statute, however, contained no provision expressly conferring the duties and powers of that officer, in regard to this improvement, upon any officer or board in the new city. But it provides that all laws, or parts of laws, previously passed creating any debt or debts of the municipal and public corporations thus united and consolidated should remain in full force and effect, except that they should be carried out by the corporation of the city of New York, and under such name and in such form and manner as may be suitable to the administration of such city, and that all assessments for benefits theretofore laid or provided to be laid, should be preserved and enforced. (§ 5.) It also provides for the appointment by the mayor of a board of assessors composed of five persons, whose duty it is to make all assessments for local improvements in any part of the city as thereby constituted, other than those required by law to be confirmed by a court of record (§ 943); and that when that board has completed any proposed assessment it is its duty to give notice thereof to the owners, and to publish such notice successively for ten days, the notice to describe the limits of the assessment district, and to contain a request for persons affected by the assessment and opposed thereto, to present objections in writing, and if, after hearing and examining such objections and testimony, the assessors shall not deem it proper to alter their assessment, or having altered it there shall still be objections to it, it shall be their duty to present such objections with the proposed assessment to the board of revision of assessments. (§ 950.) The comptroller, corporation counsel and president of the board of public improvements are made the board of revision of assessments. This board is vested with full power over the revision and confirmation of assessments specified in the various laws and ordinances relating to assessments in any part of the city of New York as thereby constituted, other than assessments made by commissioners appointed by a court of record,

and other than those confirmed by the assessment board. It is given power to consider objections on the merits, subpœna and examine witnessess, confirm assessments or refer them back to the board of assessors for correction. (§ 944.) The powers conferred by these sections of the charter are substantially the same as those conferred upon similar boards in the former city of New York, and those powers are expressly extended to the territory embraced in the present city. (§ 945.)

That under and by virtue of these various statutes the power to make the assessments in question devolved upon the board of assessors of the city of New York is not denied. The only contention of the relator is that upon his filing a written objection to the assessment made by such board, which did not change the assessment to his satisfaction, it was its duty to transmit the assessment to the board of revision for its action thereon. We think his contention must be sustained.

Although it is true that under the previous acts relating to this improvement, it was provided that the decision of the assessing officer or officers should be final, yet, as there is no such officer in existence under the law as it now stands, and as we find no existing statute providing that the assessment by the board of assessors of the city shall be final, except where there is no objection or the assessment is altered to the satisfaction of the objectors, and there is an express provision that under circumstances like those presented in this case it shall be the duty of the board of assessors to present such objections with the proposed assessment to the board of revision of assessments for its review, it is quite clear that the contention of the appellant must be sustained.

It follows that the order appealed from should be reversed, and the assessment sent to the board of revision of assessments to proceed thereon according to the provisions of law, with costs to the appellant.

Parker, Ch. J., Gray, O'Brien, Haight, Vann and Cullen, JJ., concur.

Order reversed, etc.